UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Dione Taylor,
        Petitioner

        v.                                  Case No. 23-cv-150-SM
                                            Opinion No. 2023 DNH 073

Warden, FCI Berlin,
        Respondent


**O R D E R**


Dione Taylor is a federal prisoner currently being held at the Federal Correctional Institution in Berlin, New Hampshire. Pursuant to 28 U.S.C. § 2241, he petitions the court to direct the Bureau of Prisons ("BOP") to amend his projected release date to account for time credits he has earned under the First Step Act. Because there are no genuinely disputed material facts and because, as a matter of law, Taylor is not entitled to the relief he seeks, the government's motion for summary judgment is granted.


**Background**

There are two ways by which inmates serving federally-imposed sentences may reduce the amount of time they must serve in prison. Those serving a term of imprisonment greater than

one year may earn "good time" credits for "exemplary compliance with institutional disciplinary regulations." 18 U.S.C. § 3624(b)(1). Eligible inmates may also earn "time credits" under the First Step Act for the successful completion of "evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A). This case involves the latter.

Taylor is currently serving a 120-month term of imprisonment, to be followed by a three-year term of supervised release. With the benefit of good time credits, his anticipated "Final Statutory Release Date" is February 24, 2025. See Sentence Monitoring Computation Data (document no. 5-1) at 5 of 26. He does not dispute that calculation. He has earned a number of FSA time credits, 365 of which may (potentially) be applied toward his early transfer and supervised release. See FSA Time Credit Assessment as of March 25, 2023 (document no. 5-1) at 7 of 26. See also 18 U.S.C.A. § 3624(g)(3) (providing that the BOP may apply no more than 12 months of earned FSA time credits to advance an inmate's date of release from prison to supervised release).

At the moment, however, Taylor is not eligible to apply earned FSA time credits toward early release because he has,

2

since at least July of 2020, consistently been determined to pose a "high risk" of recidivism. See Inmate History – Fist Step (document no. 5-1) at 11-12 of 26. See also 18 U.S.C. § 3624(g)(1)(D) (only inmates determined to be a "minimum" or "low" risk to recidivate are eligible for early release). Indeed, because of Taylor's elevated recidivism risk, the BOP has not calculated a "projected" early release date for him. See BOP Program Statement 5410.01, First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4), Section 10(c), at 16 ("Medium and High PATTERN risk inmates may earn FTC, but will not receive an estimated FSA [Projected Released Date]").

Although his petition is not entirely clear, if liberally construed it challenges the BOP's determination that he is currently "ineligible" under the First Step Act to apply his earned time credits toward early release. He claims that "if his FSA time credits were applied, he should be transferred to prerelease custody in 2023." Preliminary Review and Order Directing Service (document no. 2) at 1. See also Exhibit 1 to Petition (document no. 1-1) at 1 (in which Taylor asserts that proper calculation and application of his FSA time credits would result in his "immediate release").

## Discussion

Taylor's petition fails for several reasons. First, he has failed to fully and properly exhaust available prison administrative remedies relating to his FSA status. See Affidavit of Maury Yeakel, Supervisory Correctional Systems Supervisor (document no. 5-1) at 1, para. 16 ("I reviewed SENTRY administrative remedy records pertaining to Petitioner. Petitioner used the administrative remedy process in the past. However, he has not filed any Requests for Administrative Remedy or Administrative Appeals related to his risk assessment, eligibility, or calculation/application of FSA time credits."). And, barring unusual circumstances not alleged here, claims that have not been fully and properly exhausted are subject to dismissal. See generally Gonzalez v. Yates, 2023 WL 2916677 (E.D. Ark. April 12, 2023) (noting that a prisoner may be excused from exhausting administrative remedies if his or her claims raise only legal issues (e.g., proper interpretation of the FSA) or if the prisoner is near the end of his or her term of imprisonment and lacks sufficient time to properly exhaust).

But, even if Taylor had fully and properly exhausted his claims (or if he were excused from doing so because his petition raises only a legal challenge to the BOP's interpretation of the FSA), it is plain that he is not entitled to the relief he

4

seeks.  As a preliminary matter, the court notes that Taylor says he has accrued 2,144 program days under the First Step Act. See Petition (document no. 1) at para. 13.  That appears to be incorrect.  It is, perhaps, because that total impermissibly takes into account programs in which Taylor participated prior to the effective date of the First Step Act.  See 18 U.S.C. § 3632(d)(4)(B)(i) ("A prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed prior to the date of enactment of this subchapter.").  See also Exhibit to Petition (document no. 1-1) at 2 (noting a "start" date of October 17, 2016 for the accrual of "program days").  The First Step Act was enacted into law on December 21, 2018.  At the earliest, then, inmates could only begin to accrue "program days" (and FSA time credits) starting on that date.  See 28 C.F.R. § 523.42(b)(2).

According to the BOP's most recent calculation (which properly begins on December 21, 2018), Taylor has accrued 1428 program days.  Given Taylor's assessed recidivism risk and the rate at which he can accumulate FSA time credits, that means he has earned 470 FSA time credits.  See FSA Time Credit Assessment (March 23, 2023) (document no. 5-1) at 7 of 26.  See generally 18 U.S.C. § 3632(d)(4)(A) (providing that a prisoner shall earn

5

10 days of time credits for every 30 days of successful participation in recidivism reduction programming; prisoners (unlike Taylor) who are determined to be a minimum or low risk for recidivating shall earn an additional 5 days of time credits for every 30 days of successful participation).

Taylor acknowledges (and does not challenge) the fact that none of his periodic recidivism risk evaluations has placed him in either the "minimum" or "low" risk categories. See Petition at para. 13. In fact, dating as far back as July of 2020, all of his routine assessments have placed him in the "High Risk Recidivism Level." See Inmate History – First Step (document no. 5-1) at 11-12 of 26. Consequently, although Taylor has been able to earn FSA time credits, he is not (currently) eligible to apply those time credits. See 18 U.S.C. § 3624(g)(1)(D)(ii) (to be eligible for early release to supervised release based upon earned FSA time credits, "the prisoner [must have] been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner."). The requirements for early release to prerelease custody are similar, but slightly more stringent. See 18 U.S.C. § 3624(g)(1)(D)(i)(I) and (II).

Should Taylor subsequently be determined to be a minimum or low recidivism risk, he will then be able to apply earned FSA time credits toward early release. At this time, however, the BOP has properly determined that Taylor is not eligible to do so. See Sentencing Monitoring Computation Data (document no. 5-1) at 5 ("FSA Eligibility Status is: Ineligible").

Finally, even if Taylor's recidivism risk assessment were sufficiently low to permit him to apply earned time credits toward early release, he could not yet do so. With the benefit of accrued good time credits, his anticipated release date is February 24, 2025. As noted above, Taylor has earned 470 FSA time credits. But, as of the date on which he filed his habeas corpus petition (February 21, 2023), Taylor had 734 days remaining on his prison sentence. Consequently, he is not yet entitled to apply any FSA time credits toward prerelease custody or supervised release and his challenge to the BOP's calculation of his release date is premature. See 18 U.S.C. § 3624(g)(1)(A) ("This subsection applies in the case of a prisoner who . . . has earned time credits under the risk and needs assessment system developed under subchapter D . . . in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment."). See also 28 C.F.R. § 523.44(b).

7

In short, eligible inmates can <u>accumulate</u> FSA time credits throughout their incarceration, but they may only <u>apply</u> those accumulated time credits toward early release once they are sufficient in number to meet or exceed the time remaining on the inmate's imposed term of imprisonment <u>and</u> the inmate's assessed risk of recidivism is sufficiently low.  Taylor meets neither of those prerequisites and his claimed entitlement to "immediate release" is without merit.

Parenthetically, the court notes that even if Taylor fails to lower his risk of recidivism to a "minimum" or "low" level, he might still have an avenue of relief.  If he meets the requirements of 18 U.S.C. § 3624(g)(1)(D)(i)(II)(aa) through (cc), Taylor could petition the warden to exercise his discretion to apply Taylor's earned FSA time credits toward early release to prerelease custody or supervised release.  An inmate initiates that process by "submitting a BP-A0148, Inmate Request to Staff, during their regularly scheduled Program Review."  BOP Program Statement 5410.01, <u>First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)</u>, Section 10(c), at 16.

## Conclusion

For the foregoing reasons, as well as those set forth in the government's memorandum, there are no genuinely disputed material facts and the government is entitled to judgment as a matter of law with respect to all claims advanced in Taylor's petition. Accordingly, the government's Motion for Summary Judgment (**document no. 5**) is granted and Taylor's Petition for Relief under § 2241 (**document no 1**) is denied.

The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

June 14, 2023

cc:  Dione Taylor, pro se
     Seth R. Aframe, Esq.

9